**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| ALEJANDRA SOTA MIRAFUENTES, | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-00610 (LO/JFA) |
| DOLIA ESTEVEZ, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE CORRECTED AMENDED
COMPLAINT**

John A. Trocki, III
MORRISON & FOERSTER LLP
1650 Tysons Boulevard Suite 400
McLean, Virginia  22102-4220
Telephone:  (703) 760-7700
Facsimile:   (703) 760-7777

Ronald G. White (admitted *pro hac vice*)
Kayvan B. Sadeghi (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000
Facsimile:   (212) 468-7900

*Of counsel:*

Charles J. Glasser, Jr.
Charles Glasser LLC
53 Valley Way
West Orange, NJ 07052
Telephone:  (973) 666-6270

*Attorneys for Defendant Dolia Estevez*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL BACKGROUND ................................................................... 3

ARGUMENT .......................................................................................... 10

I.     THE DEFAMATION CLAIMS SHOULD BE DISMISSED ......................................... 11

    A.     The Court Exercises an Essential Gatekeeping Function, Determining On The Pleadings Whether the Claim Challenges Protected Expression Or Any Provably False Factual Statement. ............................ 11

    B.     Truth Precludes A Claim Based On Any Factual Statement About Sota In The Article. .................................................................. 13

    C.     The Article As A Whole—A Top 10 List Of Those Perceived To Be Among The Most Corrupt—Expresses Protected Opinion. .............................. 16

        1.     A "Top 10" List Of "Corrupt" Public Figures Is A Classic Expression Of Opinion And Political Rhetoric. ............................ 16

        2.     The Characterization Of Plaintiff As "Corrupt" Is Not Actionable Because It Is Based On Disclosed Facts She Does Not Dispute. ................... 19

    D.     Plaintiff Fails To Plead Actual Malice .................................................... 20

        1.     Plaintiff's Attempts To Link Ms. Estevez To An Elaborate Conspiracy By Mexican Non-Parties Are Neither Plausibly Alleged Nor Legally Sufficient. ............................ 22

        2.     Plaintiff's Remaining Allegations Also Miss The Mark. ............................ 23

    E.     Count I Is Untimely Because Plaintiff Strategically Elected Not To Abide By The Requirements Of Virginia's Savings Statute. .......................... 24

    F.     Count II—Seeking To Recast The Same 2013 Article As Two Separate Publications in 2014—Is Barred By The Single-Publication Rule ...................... 26

II.     THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED. .................. 29

CONCLUSION ........................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdvanFort Co. v. Int'l Registries, Inc.*,
    No. 1:15-CV-220, 2015 WL 2238076 (E.D. Va. May 12, 2015) ...........................4, 14, 16, 25

*AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*,
    903 F.2d 1000 (4th Cir. 1990) .................................................................................15

*Arthur v. Offit*,
    No. 01:09-CV-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010)...................................11, 12

*Ass'n for Supervision & Curriculum Dev., Inc. v. Int'l Council for Educ. Reform
    & Dev., Inc.*,
    No. 1:10CV74, 2011 WL 1225750 (E.D. Va. Mar. 14, 2011) ...............................29

*Aviation Charter, Inc. v. Aviation Res. Grp./US*,
    416 F.3d 864 (8th Cir. 2005) ...................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................10, 11

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
    No. 3:12CV204-HEH, 2012 WL 1440183 (E.D. Va. Apr. 25, 2012) ....................21

*Biospherics, Inc. v. Forbes, Inc.*,
    151 F.3d 180 (4th Cir. 1998) ......................................................................... *passim*

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)......................................................................12

*Brainware, Inc. v. Mahan*,
    808 F. Supp. 2d 820 (E.D. Va. 2011) ......................................................................29

*Browne v. Avvo, Inc.*,
    525 F. Supp. 2d 1249 (W.D. Wash. 2007)...............................................................17

*CACI Premier Tech., Inc. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) ...................................................................................20

*Carr v. Forbes, Inc.*,
    259 F.3d 273 (4th Cir. 2001) ...................................................................................20

*Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*,
    354 S.W.3d 234 (Mo. Ct. App. 2011).......................................................................17

ii

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ...........................................................................13

*Chaves v. Johnson*,
   230 Va. 112 (1985) ............................................................................................30

*Clark v. Viacom Int'l. Inc.*,
   No. 14-5709, 2015 WL 4098320 (6th Cir. July 8, 2015)..............................27, 28

*Coastland Corp. v. Third Nat'l Mortg. Co.*,
   611 F.2d 969 (4th Cir. 1979) ...........................................................................30

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
   249 F.3d 204 (4th Cir. 2001) ............................................................................29

*Cox v. MAG Mut. Ins. Co.*,
   No. 3:14-CV-377-JAG, 2015 WL 1640513 (E.D. Va. Apr. 9, 2015)....................29

*D.A.R.E. Am. v. Rolling Stone Magazine*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000) ............................................................24

*Desai v. Hersh*,
   954 F.2d 1408 (7th Cir.), *cert. denied*, 506 U.S. 865 (1992)...............................20

*Dodds v. ABC*,
   145 F.3d 1053 (9th Cir. 1998) ..........................................................................16

*Dunlap v. Cottman Transmission Sys., LLC*,
   287 Va. 207 (2014) ............................................................................................30

*Echtenkamp v. Loudon Cnty. Pub. Sch.*,
   263 F. Supp. 2d 1043 (E.D. Va. 2003) ..............................................................21

*Egiazaryan v. Zalmayev*,
   No. 11 CIV. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ................20

*Firth v. State*,
   306 A.D.2d 666 (N.Y. App. Div. 3d Dep't 2003) ...............................................28

*Firth v. State*,
   98 N.Y.2d 365 (2002) ...................................................................................27, 28

*Freedlander v. Edens Broad., Inc.*,
   734 F. Supp. 221 (E.D. Va. 1990) .....................................................................21

*Fuste v. Riverside Healthcare Ass'n*,
   265 Va. 127 (2003) .....................................................................................11, 16

iii

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974).................................................................................20

*Gilbreath v. Brewster*,
  250 Va. 436 (Va. 1995)...........................................................................25

*Global Relief Found., Inc. v. N.Y. Times Co.*,
  390 F.3d 973 (7th Cir. 2004) ..................................................................14

*Hall v. Virginia*,
  385 F.3d 421 (4th Cir. 2004) ....................................................................4

*Hanks v. Wavy Broad., LLC*,
  No. 2:11CV439, 2012 WL 405065 (E.D. Va. Feb. 8, 2012) ..................21

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989).............................................................................21, 22

*Hatfill v. N.Y. Times. Co.*,
  416 F.3d 320 (4th Cir. 2005) ..................................................................24

*In re MicroStrategy, Inc. Secs. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) .....................................................23

*Jackson v. Hartig*,
  274 Va. 219 (2007) .................................................................................21

*Jordan v. Kollman*,
  612 S.E.2d 203 (Va. 2005)......................................................................11

*Katz v. Odin, Feldman & Pittleman, P.C.*,
  332 F. Supp. 2d 909 (E.D. Va. 2004) .....................................................26

*Lewis v. Kei*,
  281 Va. 715 (2011) .................................................................................12

*Martin Marietta Corp. v. Evening Star Newspaper Co.*,
  417 F. Supp. 947 (D.D.C. 1976)..............................................................24

*Masco Contractor Servs. E., Inc. v. Beals*,
  279 F. Supp. 2d 699 (E.D. Va. 2003) .....................................................29

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)..............................................................................14, 22

*Mayfield v. NASCAR*,
  674 F.3d 369 (4th Cir. 2012) ................................................................13, 21

iv

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) .........................................................................24

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ..............................................................................................11

*Mills v. Alabama*,
    384 U.S. 214 (1966) ..........................................................................................10

*Morrissey v. William Morrow & Co.*,
    739 F.2d 962 (4th Cir. 1984) ...........................................................................26

*Muir v. Navy Fed. Credit Union*,
    744 F. Supp. 2d 145 (D.D.C. 2010) ................................................................30

*Myers v. Bos. Magazine Co.*,
    403 N.E.2d 376 (Mass. 1980) ..........................................................................17

*N.Y. Carpet World, Inc. v. Grant*,
    912 F.2d 463, 1990 WL 123871 (4th Cir. 1990) .............................................29

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) .........................................................................13

*Pace v. Rebore*,
    107 A.D.2d 30 (2d Dep't 1985) ........................................................................19

*Parisi v. Sinclair*,
    774 F. Supp. 2d 310 (D.C. 2011) .....................................................................24

*Payne v. Brake*,
    439 F.3d 198 (4th Cir. 2005) ......................................................................25, 26

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014)............13, 22

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
    42 N.Y.2d 369 (1977) .......................................................................................19

*Schaecher v. Bouffault*,
    772 S.E.2d 589 (Va. 2015)................................................................................12

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ...............................................................................13

*Seaton v. TripAdvisor, LLC*,
    728 F.3d 592 (6th Cir. 2013) ............................................................................17

v

*Sharon v. Time, Inc.*,
    599 F. Supp. 538 (S.D.N.Y. 1984) ..................................................................................20

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ...............................................................................................21, 23

*Wash. Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966) .....................................................................................12

*Yeagle v. Collegiate Times*,
    497 S.E.2d 136 (Va. 1998) ..........................................................................................13

*Zerangue v. TSP Newspapers, Inc.*,
    814 F.2d 1066 (5th Cir. 1987) .....................................................................................20

*ZL Techs., Inc. v. Gartner, Inc.*,
    709 F. Supp. 2d 789 (N.D. Cal. 2010), *aff'd*, 433 F. App'x 547 (9th Cir. 2011) ...................17

**Statutes**

Va. Code Ann.
    § 8.01-229(E)(1) .................................................................................................25, 26
    § 8.01-229(E)(3) .......................................................................................................25
    § 8.01-247.1 ..............................................................................................................24

ny-1206742

Defendant Dolia Estevez respectfully submits this memorandum of law in support of her motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Corrected Amended Complaint filed by Plaintiff Alejandra Sota Mirafuentes ("Plaintiff" or "Sota").

## PRELIMINARY STATEMENT

Plaintiff's amended complaint must be dismissed with prejudice because this suit impermissibly seeks to hold Ms. Estevez liable for exercising her editorial discretion by including Plaintiff Alejandra Sota in a Top 10 list of Mexicans perceived to be among the most corrupt in 2013 (the "Article"). When Ms. Estevez wrote the Article, it had been widely reported that Plaintiff was under investigation for suspected corruption in office. Plaintiff wishes that Ms. Estevez had not shone a spotlight on those suspicions, but her claim that she was defamed fails as a matter of law.

***First***, the case must be dismissed for challenging protected expression and not a statement of provable fact. The law in Virginia, this Circuit, and elsewhere, requires dismissal on the pleadings of defamation claims challenging protected expression, to avoid the chilling effect on the press of protracted discovery. Those concerns are acute here because the burdens of the international discovery that Plaintiff plans would be extreme. Plaintiff's counsel describes hundreds of hours of work by multiple lawyers, just to amend her damages allegations. Add to that the daunting prospect of discovery into suspected corruption in the Mexican government and into Plaintiff's conspiracy theories involving a non-party media and telecommunications conglomerate and events allegedly occurring over a span of many years, in Mexico.

Meanwhile, discovery is irrelevant to whether the Article states provably false assertions of fact. For that *legal* question, the Court must place itself in the shoes of a "reasonable reader." Additional facts to be adduced in discovery would not be available to the reasonable reader, and thus are irrelevant to the Court's required threshold inquiry.

1

The few relevant facts are beyond dispute: in 2013, Mexican authorities publicly launched an investigation of Plaintiff for "alleged embezzlement and trafficking of influence" and for "favoring friends . . . with government contacts" during her time in office as the spokeswoman to former Mexican President Felipe Calderón.  The Article noted that Sota was under investigation and provided a link to recent coverage in a mainstream Mexican publication.  That *is* a *perception* of corruption, and if the Article said only that, truth would bar the claim and this suit would likely never have been brought.

Plaintiff is really complaining about Ms. Estevez' editorial discretion to select Plaintiff as one of ten people "perceived to be among the most corrupt" in 2013.  That selection, expressly based on the undisputed facts, is plainly subjective.  What sort of public corruption accusations, at what level of government, puts someone *among* those *perceived* to be the *most* corrupt?  No reasonable reader could interpret Ms. Estevez's selection of a Top 10 to be a verifiable assertion of fact.  The Article does not purport to rely on any objective methodology and Plaintiff's efforts to infer one stretch innuendo past the breaking point.

***Second***, the Complaint fails to allege any facts that could plausibly establish that Ms. Estevez acted with actual malice even if the Article were actionable.  The amended Complaint reiterates Plaintiff's elaborate theories of Mexican companies and media personalities conspiring in a complex plot to harm Plaintiff, with no new factual specification.  The imagined link to Ms. Estevez is implausible and, in any event, the law is clear that allegations of "ill will" do not suffice to allege actual malice.  Repeated conclusory allegations that Ms. Estevez "must have," "could have," and "should have" known the Article was false, do not add up to a plausible assertion of actual malice.

2

***Third***, Plaintiff's defamation claim is untimely because it was filed well over a year after the Article was published and Plaintiff made a strategic choice not to abide by the requirements of Virginia's saving statute.  In recognition of her serious statute of limitations problem, Plaintiff seeks to bring the 2013 Article into the limitations period by characterizing the Article as three separate instances of defamatory publication.  That transparent tactic fails as a matter of law. Limited non-defamatory updates that leave the original substance of the Article intact, without changing its location or re-promoting it, do not reanimate the statute of limitations for a claim based on the original content.

Finally, Plaintiff's claim for tortious interference should be dismissed for failure to adequately plead any of its elements.  Plaintiff admits she did not even have a business at the time of the Article, and accordingly cannot adequately plead any reasonably probable prospective business or any basis to infer that Ms. Estevez knew Plaintiff was starting a business, much less that there were any specific prospective projects with which she might interfere.

This is the third time Ms. Estevez has briefed a motion to dismiss.  Plaintiff has had ample opportunity to put forth her best pleading and it still fails to state a claim.  The Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Sota served in the administration of then Mexican President Felipe Calderón, from 2006 to 2012, as his official spokesperson, the administration's general coordinator of media and communications, and the national security spokeswoman.  (Am. Compl. ¶ 39.)  She "was named one of the 300 most influential leaders in Mexico for 2012."  (¶ 44.)

In August 2013, following Mexican press reports of influence-peddling during Sota's service in the Calderón administration, Mexican senators publicly filed resolutions in the Mexican Senate calling for, *inter alia*, investigations into (1) "the contracts granted through

3

direct awards by Alejandra Sota Mirafuentes" to the company called 'DEFOE Experts on Social Reporting'"—a company run by former classmates of Ms. Sota; and (2) "the variations in the asset declarations of Alejandra Sota Mirafuentes during the time she exercised her activities as a public servant."[1]  In October 2013, yet another group of legislators published a resolution in the Mexican Senate, calling for an investigation of Sota for, *inter alia*, "acts that probably constitute crimes against the finances of the Nation."[2]

Defendant Dolia Estevez is a part-time "Washington correspondent" for Noticias MVS, a media conglomerate in Mexico, as well as a Forbes contributor, and the author of the Article that prompted this suit.  She resides in Virginia.  (¶ 30.)

On December 16, 2013, a few months after the Mexican Senate publicly filed resolutions to investigate Sota for corruption, Ms. Estevez posted the Article, titled "The 10 Most Corrupt Mexicans of 2013," on Forbes.com.  Observing that "corruption has long been a part of [Mexico's] political culture," Estevez provided "a list of the 10 Mexicans perceived to be among the most corrupt."  *Id.*  The Article presents a selection of individuals representing a variety of

---

[1] *See* Exhibit A to the July 20, 2015 Declaration of Kayvan B. Sadeghi ("Sadeghi Decl.") (*Document from the Senators of the Parliamentary Group of the Institutional Revolutionary Party, Which Holds the Motion to Call Upon the Chief Audit Office of the Federation to Report If After Conducting the Audit of Fiscal Year 2012 for the Presidency of the Republic, the Contracts for Consultancy Services that were Granted Under a Direct Award Met the Provisions of the Public Sector Acquisitions, Leases and Services Act* (Aug. 7, 2013) (referencing prior media coverage) (provided in Spanish with certified English translation).  The court may, and should, take judicial notice of the legislative materials and articles cited by Defendant for the fact of their existence (not the truth of their contents).  *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (finding it proper to take judicial notice of information publicly available on a website of the Virginia Division of Legislative Services); *AdvanFort Co. v. Int'l Registries, Inc.*, No. 1:15-CV-220, 2015 WL 2238076, at *10 n.10 (E.D. Va. May 12, 2015) (newspaper articles properly considered on motion to dismiss, on the question of plaintiff's public figure status); Fed. R. Evid. 201 (providing for judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

[2] *See* Sadeghi Decl. Ex. B (*Point of Agreement by which the Necessary and Appropriate Actions are Requested to be Carried Out in Order to Investigate Acts that Probably Constitute Crimes Committed by Ms. Alejandra Sota Mirafuentes, Spokesperson for the Ex-President Felipe Calderón Hinojosa* (Oct. 1, 2013) (Mex.)).

forms of widely-reported corruption in Mexico, including union leaders, representatives of various political parties, former government officials, and other members of the political elite. Sota is included as the last individual on the list, described as follows (*see* Am. Compl. Ex. 1):

> **Alejandra Sota**, former President Calderon's spokesperson, is being <u>investigated by Mexican authorities</u> for alleged embezzlement and trafficking of influence.  She is suspected of favoring friends and former classmates with government contracts during the time she served as a top government official.  She is currently attending graduate school at Harvard's Kennedy School even though she has no <u>college degree</u>.

The first underlined passage in the Article provide a hyperlink to a November 25, 2013 article in the Mexican newspaper *Excelsior* reporting that the Mexican Ministry of Public Administration (SFP) was investigating whether Sota "deliberately delivered contracts from Los Pinos [the official residence and office of the President of Mexico] to her friends and former colleagues."[3] The second underlined passage links to an August 6, 2013 post by Estevez on Forbes.com reporting that Sota was enrolled in the Harvard Kennedy School's Mason Program without having completed a bachelor's degree.  "Sota's controversial enrollment . . . comes months after Calderón, her political mentor, began a one-year fellowship as lecturer and researcher at HKS," which prompted "a 34,000 signature petition asking Harvard to dis-invite" President Calderon. The article notes that "[a]side from Sota, the Mason Program has enrolled

---

[3] *See* Dolia Estevez, *The 10 Most Corrupt Mexicans of 2013*, Forbes (Dec. 16, 2013, 2:40 PM), http://www.forbes.com/sites/doliaestevez/2013/12/16/the-10-most-corrupt-mexicans-of-2013/ (providing hyperlink to Hector Figueroa, *Investigan a Alejandra Sota por tráfico de influencias* [*Alejandra Sota under investigation for influence peddling*], Excelsior (Nov. 25, 2013, 9:08 AM) A copy of the cited article, including English translation, is attached as Sadeghi Dec'l Ex. C (also *available at*  http://www.excelsior.com.mx/nacional/2013).  That is just one of many articles addressing the demands that Ms. Sota be investigated for corruption.  *See, e.g.*, Jorge Monroy, *Demands are made to investigate the contracts awarded to Sota's friends*, El Economista (Aug. 5, 2013, 11:08 PM), *available at* http://eleconomista.com.mx/sociedad/2013 /08/05/exigen-investigar-contratos-otorgados-amigos-sota; Tania Rosas, *Party of the Democratic Revolution demands that Sota be investigated*, El Economista (Oct. 1, 2013, 11:55 PM), *available at* http://eleconomista.com.mx/sociedad/2013/10/01/prd-exige-que-investiguen-sota; Jorge Monroy, *SFP investigates Alejandra Sota and Mony de Swaan*, El Economista (Nov. 21, 2013, 2:01 PM), *available at* http://eleconomista.com.mx/sociedad/2013/11/21/sfp-investiga-alejandra-sota-mony-swaan.

three more members of Calderon's party," including Sota's husband.  The article also explains that "while it is extremely rare for someone to attend Harvard Kennedy School ["HKS"] prior to completing a bachelor's degree, the Admissions Committee reserves the right to grant an exception."[4]

### The Updates

Sota and others objected to being included in the Article.  One objector was Humberto Moreira.  The Article states, among other things, that a "debt scandal forced Moreira's resignation first as governor and later as head of the PRI."  In response, "counsel for Humberto Moreira denied that his client was involved in any corruption scandal" and demanded that he be taken off the list.  (Article, Am. Compl. Ex. 3 at 6.)  Ms. Estevez' then-counsel responded, explaining among other things, that "it is clear from the context of the blog posting as a whole that Ms. Estevez does not purport to have conducted her own investigation" and that  "the focus of Ms. Estevez' blog posting is not an allegation that your client has been determined to be corrupt," but rather that he was "*perceived to be corrupt*" based on the fact that "the persons listed are *widely reported to be* corrupt . . . in materials published on the internet and elsewhere."  Because the gist of the statement about Mr. Moreiera—widespread reports of a scandal—was "unquestionably" true, truth would constitute a defense to any defamation claim. (*See* Am. Compl. Ex. 4 at 3.)  Both counsel's letters were posted, under the statement about Mr. Moreira.  (*See* Am. Compl. Ex. 1.)

A December 23, 2013, update noted that Sota objected to being included in the list.  On December 15, 2014, Ms. Estevez published another update noting that Sota was "cleared" of "illicit enrichment" and added a link to an article about the end of that investigation.  (Am.

---

[4] Dolia Estevez, *Do You Really Need a College Degree To Study at a Harvard Graduate School?*, Forbes (Aug. 6, 2013, 12:25 PM), *available at* http://www.forbes.com/sites/dolia estevez/2013/08/06/do-you-really-need-a-college-degree-to-study-at-a-harvard-graduate-school/.

ny-1206742

Compl. Exs. 2, 3.)  The update described the agency that investigated Sota as "defunct."  One week later, and with no prompting from Sota, Ms. Estevez clarified that: "The agency does exist though Congress approved dissolving it in 2012."  (*Id.*)

At all times, the original content of the Article was left in place, verbatim, at the same URL where it was posted in 2013.  (*See id.*)  The Complaint alleges no efforts to publicize or draw any attention to the existence of the updates or to draw new attention to the Article.

### The Admitted Facts

Sota admits the truth of the only two objective factual statements about her in the Article: (1) that she was under investigation by Mexican authorities at the time the Article was posted (¶¶ 85-86); and (2) that she attended graduate school at the Kennedy School without first receiving a bachelor's degree.  (¶¶ 76-77.)  Sota's suit challenges Ms. Estevez's editorial decision, based on those undisputed facts, to include her in an Article about those "perceived to be among the most corrupt."  She alleges that "the investigation . . . ended in May 2014, with a finding of no evidence of wrongdoing."  (¶ 148.)  She disputes use of the term "defunct" to describe the investigating agency but does not dispute that Congress approved dissolving it.

### The (Few) Factual Allegations Regarding Ms. Estevez

The amendments to the Complaint add no facts to support the imagined conspiracy against Ms. Sota or Ms. Estevez' purported connection to it.  The Complaint still alleges a dispute between the Calderón administration and a Mexican conglomerate, MVS, which allegedly resulted in the brief firing and re-hiring of Mexican television personality, Carmen Aristegui, in 2011.  (*See* ¶¶ 11-17.)  The Complaint still alleges no relevant *facts* to plausibly suggest that Ms. Estevez participated in this supposed conspiracy related to an alleged dispute, years earlier in Mexico, between MVS and the administration Sota represented.

7

The facts alleged about Ms. Estevez are:  She is a resident of Virginia and a "Forbes contributor." (¶ 30)  She is also a Washington D.C. correspondent for MVS (*Id.*), appeared on "various programs" with Ms. Aristegui, including to discuss the Article on a December 17, 2013 television program (¶¶ 124, 126), and received unspecified payments from "MVS, Ms. Aristigui, and/or entities affiliated with Ms. Aristigui" (presumably referring to payment for Ms. Estevez' work as a correspondent).  (¶ 125.)  In July 2013, Ms. Estevez contacted Harvard to obtain information about when Plaintiff would be starting a program there (¶ 82); and she also allegedly sent an email to former President Calderón "suggesting" that he had improperly influenced Harvard's decision to enroll Plaintiff.  (¶ 83.)

Ms. Estevez wrote the Article in December 2013 (¶¶ 1, 89), which includes a link to her earlier article about Plaintiff's Harvard attendance (Am. Compl. Ex. 1), and she posted two links to the Article on Twitter the day it was first published.  (¶¶ 112-114.) She did not contact Plaintiff before posting the Article (¶ 105), and she said in an interview the day after publication that "corruption in Mexico is such that it is not enough to make a top ten, but [there] could be an encyclopedia on the subject."  (¶ 142.)  She posted updates to the Article noting that Ms. Sota had been "cleared" of one charge by an agency that had been investigating her (¶ 119 & Exs. 2, 3); and also appended to the Article a letter from her lawyer responding to counsel for Humberto Moreira, who similarly complained that he should not have been included in the list.  (¶ 92.)

On those sparse facts, the Complaint speculates that the Article was a "hit piece" specifically targeting Plaintiff as an "intentional act of retaliation . . . intended to demonstrate what happens to government officials who stand up to entrenched corporate interests."  (¶ 171.)[5]

---

[5] The amendments to the Complaint further confuse things.  Contrary to Plaintiff's conspiracy theory, the Complaint now alleges that Ms. Estevez was *not* uniformly critical of the Calderon administration and did not publish anything critical of Sota "even when MVS attempted in 2012

***Allegations of Unrealized Business Aspirations***

The Complaint still does not name a single existing or potential client that Sota lost as a result of the Article, and instead contains repeated general references to "government officials," "prominent officials," "private companies," "health-care related entities," "a major client," and "a consulting company."  (Am. Compl. ¶¶ 19, 70, 195.)[6]  The one thing to be gleaned from these cryptic allegations is that no *existing* contract was terminated.  Rather, the Complaint admits that Sota *was not even in business* when the Article was published: she was in the "very early" stages of trying to build a new business and had "no experience in operating a business."  (¶ 7.)

Crucially, Plaintiff does not and cannot allege that Ms. Estevez knew of Sota's future plans.  She did know that Sota was a student.  (*See* Article, Am. Compl. Ex. 1.)  In conclusory fashion, Plaintiff alleges that Ms. Estevez also "knew *or should have known*" of Sota's "very early stage[]" business plans based on some report in "early 2013." (¶¶ 7, 80 (all emphasis added unless otherwise noted).)  The Complaint does not specify what was reported, where it was reported, or why Ms. Estevez might know of it.

---

to use Sota as a face of censorship for its own commercial reasons."  (¶¶ 64-66.)  Ms. Estevez disagrees with Plaintiff's characterization of her writing, but at all times her views are her own and have nothing to do with an imagined conspiracy involving MVS.  It is also unclear what Carlos Slim now has to do with anything (*see* ¶¶ 47-48), but the suggestion that Ms. Estevez is somehow "aligned" with him is just as absurd and unfounded as the purported MVS conspiracy.

[6] The Complaint associates imprecise dollar figures with two allegations.  (*See* ¶ 195(c) ("$875,000 to $1.7 million" for one project); (k) ($50,000 per month, though unclear as to duration and as to whether the dollar figure is an estimated total cost of the client's project, anticipated revenue for the consultant, or something else).)  The figures in the Complaint should also be taken with a grain of salt in light of the various other errors in the Complaint.  For example, the Complaint alleges that the population of Mexico is 30 million (¶¶ 3, 8), when in fact it is over 120 million.  (*See*: https://www.cia.gov/library/publications/the-world-factbook/geos/mx.html.)  Similarly, the Complaint alleges that Carlos Slim has a 30% stake in the New York Times (¶ 47), when in fact he increased his holdings this year from 7% to 16.8%.  (*See* http://www.nytimes.com/2015/01/15/business/carlos-slim-more-than-doubles-his-stake-in-times-company.html?_r=0.)

*Procedural History*

Plaintiff first filed a defamation suit related to the Article in federal court in New York on on December 16, 2014 (*Mirafuentes v. Forbes Media, LLC et al.*, No. 1:14-cv-09921-JMF (S.D.N.Y.) ("New York Action"), ECF No. 1).  Well past a year after the Article was published, but before the New York federal court ruled, Plaintiff filed this suit on May 12, 2015.  The New York Action was subsequently dismissed by the court on May 19, 2015 for failure to allege a basis for diversity jurisdiction.  (New York Action, ECF No. 47.)

This Court dismissed the first complaint filed here, with leave to replead.  (ECF No. 27.) Plaintiff filed her amended complaint slightly after the deadline, then filed a Corrected Amended Complaint the next day.  (*See* ECF No. 31.)  In justifying the delay, her counsel explained that he and a colleague "worked approximately 150-250 hours each. . . spoke to eleven witnesses, the majority of them whose sole fluent language was Spanish and who reside in Mexico. We spent one business week in Mexico. . . . [reviewed] several thousand pages . . ., most of which were in Spanish. . . . We performed additional—and extensive—financial analysis."  (Declaration of Jonathan Sherman ("Sherman Decl."), dated Sept. 25, 2015 (ECF No. 31-4), ¶¶ 7-8.)

## ARGUMENT

The Complaint should be dismissed because it is untimely, it fails to plead any viable cause of action, and it seeks to chill core political speech about government corruption. "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."  *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is ***plausible*** on its face."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible only if the plaintiff pleads

"factual content" that "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Where a plaintiff has not "nudged

[her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."

*Twombly*, 550 U.S. at 570.

## I.    THE DEFAMATION CLAIMS SHOULD BE DISMISSED.

Plaintiff's defamation claims should be dismissed with prejudice because they

impermissibly seek to hold Ms. Estevez liable for an expression of opinion and political rhetoric,

and because Plaintiff fails to allege any facts to raise her conclusory allegations of actual malice

above pure speculation.  The defamation claims are also untimely.

### A.    The Court Exercises an Essential Gatekeeping Function, Determining On The Pleadings Whether the Claim Challenges Protected Expression Or Any Provably False Factual Statement.

Both the Virginia Constitution and the First Amendment to the U.S. Constitution protect

expressions of opinion and "compel the imposition of th[e] twin requirements" that a statement

may be held defamatory only if it is "(1) a statement of actual fact that is (2) capable of being

proven true or false."  *Arthur v. Offit*, No. 01:09-CV-1398, 2010 WL 883745, at *4 (E.D. Va.

Mar. 10, 2010) (citing *Hyland v. Raytheon Tech. Servs. Co.,* 277 Va. 40, 47 (2009) (Virginia

Constitution); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990) (U.S. Constitution); *Fuste*

*v. Riverside Healthcare Ass'n,* 265 Va. 127, 132 (2003) (expressions of opinion "are protected

by the First Amendment of the Constitution of the United States and Article 1, § 12 of the

Constitution of Virginia").)  "Whether a statement is an actionable statement of fact or non-

actionable opinion is a matter of law to be determined by the court."  *Jordan v. Kollman,* 612

S.E.2d 203, 206-07 (Va. 2005) (citations omitted).

11

To avoid encroaching on constitutionally protected speech, trial courts are directed to enforce those limitations at the pleading stage:

> "Expressions of opinion, however, are constitutionally protected and are not actionable as defamation." Therefore, **in evaluating a demurrer** to a claim of defamation, **a trial court "*must* determine as a matter of law** whether the allegedly defamatory statements contain provably false factual statements or are merely statements of opinion."

*Lewis v. Kei*, 281 Va. 715, 725 (2011) (citations omitted). *See also Schaecher v. Bouffault*, 772 S.E.2d 589, 594-95 (Va. 2015) (affirming dismissal because statements were not actionable and reiterating that "a court *must* decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact.") (citation omitted). This obligation is placed on trial courts as a "gatekeeping function," mindful of the need to protect freedom of expression. *Schaecher*, 772 S.E.2d at 595.

The Court's obligation to act as a Constitutional gatekeeper against improperly pled defamation claims is widely recognized as necessary to prevent a "chilling effect" on protected speech—the very concern that animates the substantive limitations. As Judge Oetken of the Southern District of New York recently explained, there is "'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'" *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 264 (S.D.N.Y. 2013) (citation omitted); s*ee also, e.g., Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) (early adjudication is "even more essential" in cases implicating the First Amendment, "[f]or the stake here, if harassment succeeds, is free debate").

Following these principles, "courts in Virginia and the Fourth Circuit routinely dismiss at the outset defamation claims that are based on constitutionally protected speech by media defendants." *Arthur*, 2010 WL 883745, at *3 ("[B]ecause the defense of baseless defamation claims imposes an additional cost, in the form of potentially deterred speech, federal courts have

ny-1206742

historically given close scrutiny to pleadings in libel actions."). *See also, e.g., Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) (affirming dismissal of libel complaint because allegedly defamatory statement was not factual); *Yeagle v. Collegiate Times,* 497 S.E.2d 136 (Va. 1998) (same); *Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (affirming dismissal of libel complaint for failure to sufficiently allege actual malice).[7]

Here, the potential effect is particularly chilling because of the extraordinary burdens discovery would impose. Under Plaintiff's theory of the case, discovery would be required to address the truth or falsity of suspected corruption at upper levels of the Mexican government, a purported conspiracy orchestrated by a powerful non-party conglomerate, and damages. Plaintiff's counsel describes several hundred hours of work, eleven witnesses, and a week in Mexico merely to *allege* damages (insufficiently). (Sherman Decl. ¶ 8.)

Moreover, no amount of discovery could affect the threshold determination of whether the Article is actionable. That legal determination must be made from the perspective of an average reader of the Forbes website. *See, e.g., Ollman v. Evans*, 750 F.2d 970, 1026 n.88 (D.C. Cir. 1984) (the "publication must be taken as a whole, and in the sense in which it would be understood by the reader to whom it was addressed"); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) ("reasonable reader" standard).

### B.     Truth Precludes A Claim Based On Any Factual Statement About Sota In The Article.

Sota does not dispute the only factual statements made about her in the Article: in December 2013, she was "being investigated by Mexican authorities for alleged embezzlement

---

[7] *Citing* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure 3d* § 1357 ("When the claim alleged is a traditionally disfavored 'cause of action,' such as ... libel, or slander, the courts [tend] to construe the complaint by a somewhat stricter standard and [are] more inclined to grant a Rule 12(b)(6) motion to dismiss."). The same holds true nationwide. *See, e.g., Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614-15 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56-57 (1st Cir. 2012).

and trafficking of influence," and she was "suspected of favoring friends and former classmates with government contracts during the time she served as a top government official." (Article, Am. Compl. Ex. 3 at 6-7; *compar*e ¶ 90.) The Article also notes that Sota is attending Harvard, and that she was "admitted into the Harvard Mason Program without an undergraduate degree." (¶¶ 22, 103.) The Complaint does not dispute the accuracy of those statements. (*See* ¶ 90.)

Crucially, Plaintiff cannot argue in the face of these undisputed facts that there was *no* perception that she was corrupt. *Compare Advanfort,* 2015 WL 2238076, at *8 (recognizing that statements like "timely" are subjective provided that there was some delay, but allowing that it could be disproven if "Farajallah had hired counsel the day of the crew's arrest, or the day he discovered his crew had been arrested."). Here, Plaintiff *cannot* disprove the a perception of corruption, because she admits that she was under formal investigation at the time, and the allegations against her were widely circulated in the press. (*See* Article (providing hyperlink); *see also supra* at 5 n.3 (collecting additional coverage).) Thus, even if the Article implies *some* provable amount of "perceived" corruption, that too is beyond dispute (and more than amply supported to preclude any inference of actual malice).

Thus, for every factual statement and fairly inferred factual statement in the Article, truth bars any claim. *See, e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (substantially true accounts are protected by the First Amendment and cannot give rise to liability); *see also Global Relief Found., Inc. v. N.Y. Times Co.*, 390 F.3d 973, 987 (7th Cir. 2004) (affirming finding that articles were substantially true where they reported "that the President had issued a blocking order...against a number of organizations *suspected of* providing financial assistance to terrorist groups" because the articles do not state that the organizations were, in fact, providing such aid).

The only false factual statement Plaintiff identifies is the use of the term "defunct" in an update to the Article, added a year after it was published, to describe the agency investigating her.  The status of the agency is immaterial to the alleged defamatory sting and was corrected one week later to clarify that the agency's dissolution had been approved but it was still in operation.  (*See* Am. Compl. Ex. 3.)  Plaintiff grasps at straws, seizing on a technical distinction between "defunct" and approved for dissolution, but that distinction is not defamatory.

Plaintiff may not mix together true statements that are damaging with minor inaccuracies, to concoct a claim for defamation.  "If the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'" *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Liberty Lobby, Inc. v. Rees,* 852 F.2d 595, 601 (D.C. Cir. 1988), *cert. denied,* 489 U.S. 1010 (1989)).  *AIDS Counseling & Testing* also concerned statements about suspicions and an investigation:

> The damaging portions of the broadcast were those disclosing that ACT was under investigation by state authorities and those discussing the existence of official concern about the use of ID cards showing test results. These statements were true and true statements, no matter how damaging to the plaintiff, may never provide the foundation for a defamation claim. Nor may the plaintiffs succeed in their attempt to combine the damaging nature of certain true statements with the falsity of other, immaterial statements in order to provide the basis for a defamation claim.

*Id.* at 1004-05 (internal citations omitted).  *See also Biospherics, Inc.*, 151 F.3d at 185 (misstatement of drug development time was not actionable because it would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (citation omitted).

Here too, the allegedly defamatory sting arises from the true statement that Ms. Sota was under investigation for corruption, coupled with the editorial judgment to feature that fact by including Sota in a Top 10 list.  That is not actionable; the rest is immaterial.

15

### C.    The Article As A Whole—A Top 10 List of Those Perceived To Be Among The Most Corrupt—Expresses Protected Opinion.

Plaintiff's defamation claims must be dismissed because the allegedly defamatory sting—including Plaintiff in a list of Mexicans perceived to be *among* the top ten *most* corrupt (*see* ¶ 90)—is a protected expression of opinion and not an actionable statement of fact.

"When a speaker plainly expresses 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a] claim[ ] to be in possession of objectively verifiable [false] facts, the statement is not actionable.'" *Biospherics, Inc.,* 151 F.3d at 186 (citing *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993).  In deciding whether a statement represents opinion or rhetoric, as opposed to verifiable fact, courts must take into account the context and "general tenor" of the statements.  *AdvanFort Co.*, 2015 WL 2238076, at *6.  Even if a statement could be construed to imply a fact, it is not actionable if a reasonable reader "would recognize based, on the tenor, language, and context, that the challenged statement[ ] constitute[s] a subjective view, and not a factual statement."  *Biospherics, Inc.,* 151 F.3d at 186.

Here, the Article is not actionable because it is a typical example of opinion and political rhetoric, based on disclosed facts that Plaintiff admits are true and that indisputably constitute a perception of corruption circulating in mainstream media at the time.

### 1.    A "Top 10" List Of "Corrupt" Public Figures Is A Classic Expression Of Opinion And Political Rhetoric.

The format of the Article—a "top 10" list—and its use of superlatives, in itself signals that it is an expression of non-actionable opinion.  A top-10 list is an inherently subjective selection reflecting personal judgment: there is no possible ***objective test*** to determine who is the "most" corrupt, or to assess whether a particular individual is "more" corrupt relative to another. *See Fuste*, 265 Va. at 131-32 (opinions often are "relative in nature and depend largely upon the speaker's viewpoint").  *See also, e.g.*, *Dodds v. ABC*, 145 F.3d 1053, 1065-06 (9th Cir. 1998)

16

(statement or implication that plaintiff was "one of the three worst judges in the country" was "an opinion rather than the type of factual assertion that can be proved to be demonstrably false").  As one court noted, "[t]he 'Best and Worst' format invites the reader to test his opinions against the author's."  *Myers v. Bos. Magazine Co.*, 403 N.E.2d 376, 380 (Mass. 1980).  Indeed, the Complaint notes that readers understood the Article exactly that way, with "a number of individuals" suggesting "many other Mexicans that should have been included" (¶¶ 174-177), and those comments were displayed alongside the Article.

Courts consistently find rankings and superlatives to be constitutionally protected opinion.  *See, e.g., Seaton v. TripAdvisor, LLC*, 728 F.3d 592 (6th Cir. 2013) (rejecting a hotel's claim against the website TripAdvisor for naming it the "dirtiest hotel in America" based on reader reports); *Aviation Charter, Inc. v. Aviation Res. Grp./US*, 416 F.3d 864, 868-71 (8th Cir. 2005) (assigning lowest of four possible safety ratings to charter airline held to be non-actionable opinion).  The same holds true whether rankings specify a particular order or place plaintiff in a general category.  *See id.*[8]

Ranking "most corrupt" leaders is also common rhetoric in political discourse.  For example, one non-profit in Washington, D.C. publishes a yearly report of the "Most Corrupt Members of Congress," while another releases an annual list of the "10 Most Wanted Corrupt Politicians."[9]  Such rankings patently reflect subjective judgments and individual viewpoints:

---

[8] *See also ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 795-99 (N.D. Cal. 2010) (ranking of technology firm at lowest level possible on defendant's scale held to be non-actionable opinion), *aff'd*, 433 F. App'x 547 (9th Cir. 2011); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1251-54 (W.D. Wash. 2007) (numerical rating of lawyers held to be non-actionable opinion); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 242-43 (Mo. Ct. App. 2011) (letter grade of "C" given to business in online report held to be non-actionable opinion).

[9] *See, e.g.*, Citizens for Responsibility and Ethics in Washington (CREW), *CREW's Most Corrupt Members of Congress 2013*, *available at* http://www.crewsmostcorrupt.org/mostcorrupt /entry/most-corrupt-members-of-congress-report-2013 (past reports available at

one article suggests the Obama administration is the most corrupt in history, while another gives

that title to the Bush and Reagan Administrations.[10]  Ms. Estevez' Article, a year-end roundup of

Mexican political scandals, fits comfortably in this classic mold of political punditry.

Moreover, the Article does not purport to present an original or complete investigative

report.  Rather, it provides a brief recap for each person identified, linking to public reports of

scandals and investigations that have placed them on Ms. Estevez's radar as "among the most

corrupt" in Mexico for 2013.  *See Biospherics, Inc.*, 151 F.3d at 186 (the "tenor and context—a

breezy stocktip—differ greatly from that of the investigative report").  As such, the Article fits

with many other informal and subjective lists found on online sites, including Forbes.com.[11]

---

http://www.crewsmostcorrupt.org/mostcorrupt/entry/past-reports); Press Release, "Judicial Watch Announces List of Washington's 'Ten Most Wanted Corrupt Politicians' for 2013," Judicial Watch (Sept. 26, 2014), *available at* http://www.judicialwatch.org/corrupt-politicians-lists/judicial-watch-announces-list-washingtons-ten-wanted-corrupt-politicians-2013/ (past lists available at http://www.judicialwatch.org/corrupt-politicians-lists/).   Other examples abound. (*See* Defendant's Brief In Support of Motion to Dismiss the Complaint, filed July 20, 2015 (ECF. No. 14) at 20 n.15 (collecting examples).)

[10] *See* Eric Zuesset, *Is the Obama Administration the Most Corrupt in U.S. History?*, Huffingtonpost.com (Apr. 4, 2013), *available at* http://www.huffingtonpost.com/eric-zuesse/is-the-obama-administrati_2_b_3094454.html; Jon Ponder, *Wrong Again, Issa – the Bush and Reagan Administrations Were 'Most Corrupt,' And TARP Was Bush's Bill, Not Obamas'*, Pensitoreview.com (Apr. 27, 2012) *available at* http://www.pensitoreview.com/2012/04/27/wrong-again-issa-bush-and-reagan-administrations-were-most-corrupt-and-tarp-was-bushs-bill-not-obama/.

[11] *See, e.g.*, Stan Collender, *The Top 10 Reasons You Should Really Be Angry About The Federal Budget* (May 26, 2015, 7:00 am), *available at* *http://www.forbes.com/sites/stancollender/2015/05/26/the-top-10-reasons-you-should-really-be-angry-about-the-federal-budget/*; Mark Hughes, *Top 10 Best Christmas Movies of the Last Decade*, Forbes (Dec. 3, 2013, 11:45 AM), *available at* http://www.forbes.com/sites/markhughes/2013/12/03/top-10-best-christmas-movies-of-the-last-decade/; Jordan Shapiro, *These Are the Ten Best Teachers in the World (None of Them Are From Finland)*, Forbes (Feb. 14, 2015, 3:33 PM), *available at* http://www.forbes.com/sites/jordanshapiro/2015/02/14/these-are-the-ten-best-teachers-in-the-world-none-of-them-are-from-finland/; Jenn Choi, *Top Ten Toys to Watch in 2015*, Forbes (Mar. 21, 2015, 1:58 PM), *available at* http://www.forbes.com/sites/jennchoi/2015/03/12/top-ten-toys-to-watch-in-2015/. The "Lists" section of the Forbes website is replete with such stories.

## 2.    The Characterization Of Plaintiff As "Corrupt" Is Not Actionable Because It Is Based On Disclosed Facts She Does Not Dispute.

Plaintiff's concession that the disclosed factual bases for including her in the Article are accurate is fatal to her challenge to the editorial decision to include her.  "When the bases for the conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related."  *Biospherics, Inc.*, 151 F.3d at 185 (alteration, citation, and quotation marks omitted).

In cases challenging accusations such as "corruption," courts focus on whether the *assertions of fact* made to justify the label are actionable.  For example, in *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369 (1977), the plaintiff (a local judge) alleged that the author of a book defamed him by asserting that he was 'incompetent,' 'probably corrupt,' and 'suspiciously lenient'"  *Id.* at 376-77.  The Court of Appeals held that the claim should have been dismissed because the plaintiff challenged the characterizations, not the factual accusations of specific acts that were illegal and unethical actions.  *Id.* at 382.  Similarly, in *Pace v. Rebore*, 107 A.D.2d 30 (2d Dep't 1985), the court affirmed dismissal of a libel claim over accusations that the plaintiffs used "political clout" to influence the local school board.  The court explained: "Plaintiffs do not contest the accuracy of defendants' description of the *underlying facts*, except to allege that they did not use 'political clout' in dealing with the school board," which "was an expression of opinion, rather than a statement of fact."  *Id.* at 32.

Here, Sota does not dispute the truth of any of the factual assertions in the Article at the time of publication—in fact, she concedes in her Complaint that they were true.  Instead, she challenges only the protected editorial conclusion, based upon these stated facts, that she was "perceived to be one of the ten most corrupt Mexicans in 2013."  (*See id.* ¶ 104.)   Because the basis for Sota's inclusion on the list is set forth in the Article—and not alleged to be false—the

claim of defamation fails as a matter of law.  *See Biospherics, Inc.*, 151 F.3d at 185 ("[T]he article clearly disclosed the factual bases for its view . . . and Biospherics does not challenge their accuracy.  Its failure to do so dooms its challenge to [the] statement.").

### D.     Plaintiff Fails To Plead Actual Malice.

Plaintiff's libel claim also fails for a second, independent reason: she has not alleged any facts that, if proven, could plausibly establish that Ms. Estevez wrote the Article with "actual malice."  This constitutional limitation precludes a public figure from recovering for defamation unless she can allege and eventually prove by clear and convincing evidence "that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."  *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974).  The actual malice requirement "'was prompted by a concern that, with respect to the criticism of public officials in their conduct of governmental affairs, a state-law rule compelling the critic of official conduct to guarantee the truth of all his factual assertions would deter protected speech.'"  *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 294 (4th Cir. 2008) (quoting *Milkovich*, 497 U.S. at 14).

Plaintiff's allegations establish that she is a former public official.  (*See* ¶¶ 38, 39, 44 (alleging that Sota held multiple high-ranking positions in the Calderón administration and was "named one of the 300 most influential leaders in Mexico").)  Courts consistently hold that current and former foreign officials are subject to the actual malice requirement.[12]

---

[12] *See, e.g.*, *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1069 (5th Cir. 1987) ("ex-public officials must prove that 'actual malice' prompted speech concerning their in-office activities"); *Desai v. Hersh*, 954 F.2d 1408 (7th Cir.) (former prime minster of India was a public figure), *cert. denied*, 506 U.S. 865 (1992); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 563 (S.D.N.Y. 1984) (former Israeli defense minister is a public figure); *Egiazaryan v. Zalmayev*, No. 11 CIV. 2670 (PKC), 2011 WL 6097136, at *4 (S.D.N.Y. Dec. 7, 2011) ("courts have found foreign public officials to be public officials or public figures for the purposes of constitutional defamation law").  Whether a plaintiff is a public figure is a question of law for the court to decide. *Carr v. Forbes, Inc.,* 259 F.3d 273, 278 (4th Cir. 2001).

Where a plaintiff must plead actual malice, as Sota must, "courts in the Eastern District of Virginia have found that 'conclusory allegations regarding the [defendants'] intent ... are insufficient to survive a motion to dismiss.'" *Besen v. Parents & Friends of Ex-Gays, Inc.*, No. 3:12CV204-HEH, 2012 WL 1440183, at *6 (E.D. Va. Apr. 25, 2012) (citation omitted). Plaintiff's repeated but unfounded allegations that Ms. Estevez acted with knowledge, "serious doubt," "reckless disregard," or actual malice are exactly the sort of conclusory allegations that courts in this Circuit routinely disregard.[13]  *See id.* ("an examination of the allegations set out in Plaintiff's Complaint reveals only unadorned accusations of malice and 'a formulaic recitation of the elements of a cause of action.'").[14]

Moreover, to satisfy the actual malice requirement, it is not enough to show that a party acted with "ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989).  Rather, "actual malice" is a term of art, under which "a duty to investigate the accuracy of one's statements does not arise until the publisher of those statements has a *high degree of **subjective** awareness* of their probable falsity." *Jackson v. Hartig*, 274 Va. 219, 230 (2007).  Thus, Plaintiff's repeated allegations that the Article was "without justification" and that "no reasonable person" would have included Sota in the article (*e.g.*, ¶¶ 6, 27, 104, 133, 139), miss the mark entirely.  *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (in the defamation context, "reckless conduct is not measured by whether a

---

[13] *See, e.g.*, ¶ 120 ("Estevez published the Articles with actual knowledge. . . or at a minimum, while entertaining serious doubt regarding the truth of the statements concerning Sota"); ¶ 121 (which "as acts of revenge"); ¶ 132 (alleging "reckless disregard of the truth").

[14] *See also, e.g., Mayfield*, 674 F.3d at 377-78 (affirming dismissal of libel claim containing only "conclusory" allegations of actual malice and factual allegations that, even if true, would not support a finding of actual malice); *Hanks v. Wavy Broad., LLC,* No. 2:11CV439, 2012 WL 405065, at *13 (E.D. Va. Feb. 8, 2012) (dismissing defamation action for failure to plead facts showing actual malice); *Echtenkamp v. Loudon Cnty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003) (same); *Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 230 (E.D. Va. 1990) (same).

21

reasonably prudent man would have published, or would have investigated before publishing").

At most, such allegations suggest "mere negligence," which "does not suffice" for a showing of

actual malice.  *Masson*, 501 U.S. at 510; *see also Pippen*, 734 F.3d at 614-15 (affirming

dismissal for failure to plead actual malice where defendant allegedly failed to investigate and

failed to retract allegedly defamatory statement).

The amended Complaint adds nothing to the deficient allegations of the prior complaint.

Stripped of bare, conclusory allegations, it contains almost no ***factual allegations*** about Ms.

Estevez—and those that remain cannot support a finding of actual malice as a matter of law.

> **1.    Plaintiff's Attempts To Link Ms. Estevez To An Elaborate Conspiracy By Mexican Non-Parties Are Neither Plausibly Alleged Nor Legally Sufficient.**

Plaintiff's conspiracy theories are also unchanged.  She again alleges an elaborate

revenge plot against her by various political adversaries, including Mexican media conglomerate

MVS and a Mexican television and radio personality, Carmen Aristegui—none of whom are

named as parties in this lawsuit.  (*See* ¶¶ 120-153.)  Sota adds no facts to support these

allegations, and again asks the Court to impute the alleged motivations of these third parties (in

Mexico) to Ms. Estevez (in Virginia) solely because Ms. Estevez was the "Washington

correspondent" for Noticias MVS and had "appeared together on various programs" with Ms.

Aristegui, thus allegedly making her a "friend and colleague" of Ms. Aristegui.  (¶¶ 122-127.)

Even if these alleged motives could be attributed to Ms. Estevez—which the Complaint

fails to plausibly plead—they at most suggest ill will or spite, which would be insufficient to

establish "actual malice" as a matter of law.  *See Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 666

(it is not enough to show "ill will or 'malice' in the ordinary sense of the term").

There are no facts alleged here that even come close to suggesting that Ms. Estevez had

knowledge of this purported Mexico-based conspiracy or any reason to harbor "serious doubt[ ]"

as to the Article's truth.  *St. Amant*, 390 U.S. at 731.  The Complaint asserts bias on the grounds

that Ms. Estevez was a Washington correspondent for Noticias MVS, that she was allegedly

compensated by MVS and/or Ms. Artistegui, and that Ms. Estevez and Ms. Aristegui are

allegedly friends and colleagues and "appeared together on various programs.  (¶¶ 125, 131-32.)

These purported motives do not differentiate Ms. Estevez from any other correspondent of MVS

("one of Mexico's largest media and telecommunications conglomerates," ¶ 122); *see In re*

*MicroStrategy, Inc. Secs. Litig.*, 115 F. Supp. 2d 620, 643 (E.D. Va. 2000) ("to find such bare

allegations sufficient . . . would unfairly infer an intent to defraud based on the position an

individual held with a company") (citation omitted), or fromteh innumerable people who may

have appeared with Ms. Aristegui over the years. Allegations of generalized motives such as

those alleged against Ms. Estevez here do not suffice as a matter of law, *see In re MicroStrategy,*

*Inc. Sec. Litig.*, 115 F. Supp. 2d at 643, particularly in the face of Sota's admission (and

contemporaneous press coverage) of the fact that she was under investigation for corruption by

Mexican authorities at the time of the Article's publication.

### 2.      Plaintiff's Remaining Allegations Also Miss The Mark.

Plaintiff's remaining allegations are even more scant and—even if construed as true—fall

short of the high hurdle of actual malice. Beyond arguing that Ms. Estevez "knew . . . [or] at least

harbored serious doubt" the Article was false (¶ 132), Plaintiff argues only that Ms. Estevez did

not reach out to her for comment (¶ 105), and that the Article was never retracted.  Both

arguments fail as a matter of law.

*First,* failure to seek comment from Plaintiff does not establish actual malice.  Indeed,

even a pre-publication denial by Sota would not establish actual malice.  As the District of

Columbia Circuit has explained, "[Defendant's] failure to contact [plaintiff] himself about the

allegations provides even less support for a finding of actual malice." *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510-11 (D.C. Cir. 1996).[15]

**Second**, Plaintiff's insistence that the article should have been changed, removed, or retracted after (a) Sota objected or (b) the results of the investigation into whether she enriched herself were announced does not establish actual malice at the relevant time. It is a bedrock principle of libel law that actual malice is measured by the defendant's state of mind ***at the time of initial publication***. *See, e.g.*, *id.* at 1515 ("McFarlane presents no authority, however, nor are we aware of any, for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication").[16]

Because Plaintiff does not plausibly plead that Ms. Estevez acted with actual malice, her Complaint should be dismissed.

### E.     Count I Is Untimely Because Plaintiff Strategically Elected Not To Abide By The Requirements Of Virginia's Savings Statute.

Plaintiff's defamation claim should also be dismissed because it is time-barred under Virginia's one-year statute of limitations. Va. Code. Ann. § 8.01-247.1 (one year limitation period for defamation claims). A cause of action for defamation arises on the date of publication. *Hatfill v. N.Y. Times. Co.*, 416 F.3d 320, 334 (4th Cir. 2005). The Article was published on December 16, 2013 (Am. Compl. ¶ 89 & Ex. 1) and the Complaint in this action was filed well over a year later, on May 12, 2015. (Dkt. No. 1.)

---

[15] *See also, e.g.*, *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947, 960 (D.D.C. 1976) ("If potential plaintiffs in libel suits could cut off a malice defense simply by calling a newspaper and giving a broad denial of an article, the first amendment policy embodied in New York Times would be undermined.").

[16] *See also Parisi v. Sinclair*, 774 F. Supp. 2d 310, 319 (D.C. 2011) ("Moreover, because the actual malice inquiry is subjective – that is, concerned with the defendant's state of mind when he acted – the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication.") (quoting *McFarlane*, 91 F.3d at 1508); *D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000) (failure to retract a statement upon which "grave doubt" is cast after publication does not support claim against publisher for defamation)).

Plaintiff cannot rely on her prior New York Action to toll the statute of limitations here (*see* ¶ 218), because she filed this action *before* the New York Action was dismissed.  (*Compare* Dkt No. 1 (Complaint filed on May 12, 2015); *with* New York Action, ECF No. 47 (New York action dismissed on May 19, 2015).)[17]  Virginia's savings statute allows plaintiffs to re-file claims only *after* a timely-filed action is terminated without reaching the merits.  Va. Code Ann. § 8.01-229(E)(1).  On its face, subsection (E)(1) creates two prerequisites to its application: "*if* [1] any action is commenced within the prescribed limitation period *and* [2] for any cause abates or is dismissed without determining the merits, [*then*] the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period."  Va. Code Ann. § 8.01-229(E)(1).

The Virginia Supreme Court interpreted subsection (E)(1), consistent with its plain text, to apply only when a case is re-filed *following* a *prior* involuntary dismissal.  *See Gilbreath v. Brewster*, 250 Va. 436, 440 (Va. 1995).  Federal courts, including this Court and the Fourth Circuit, have also rejected as untimely similar complaints filed before an earlier case was terminated.  *See, e.g., AdvanFort*, 2015 WL 2238076, at *13-14 (applying the companion provision applicable to voluntary nonsuits (§ 8.01-229(E)(3)), to dismiss a defamation claim filed before entry of the non-suit order in the earlier case).  The Court relied on *Payne v. Brake*, 439 F.3d 198, 202 (4th Cir. 2005), which affirmed the dismissal of a second-filed suit because, *prior to filing*, plaintiff "failed to obtain a nonsuit order from the court [in the earlier filed action]

---

[17] Plaintiff expressly elected not to voluntarily dismiss her earlier action and preserve her time to file in this Court, because she instead sought to preserve her rights to file under New York's savings statute, which grants six additional months to refile only if dismissal of the prior action is involuntary. (*See* Sadeghi Decl. ¶ 8 & Ex. F (Letter from Jonathan Sherman to Hon. Jesse M. Furman, dated May 7, 2015, New York Action, ECF No. 40); ¶ 9 & Ex. G (Letter from Jonathan Sherman to Hon. Jesse M. Furman, dated May 12, 2015, New York Action, ECF No. 42).)

as required by Virginia law to toll the statute of limitations." *Id.* Subsequent dismissal of the first suit, after the second suit was filed, could not retroactively save the second suit.

Here the Court should dismiss the defamation claims with prejudice. Subsection (E)(1) provides that "another action may be brought within the remaining period" of the original statute of limitations, not counting the time in which the earlier action was pending. Va. Code Ann. 8.01-229(E)(1). Plaintiff filed the New York action on December 16, 2014, the last day of Virginia's one-year statute of limitation. (New York Action, ECF No. 1.) As a result, there is no "remaining period" left under the original statute of limitations.

**F.     Count II—Seeking To Recast The Same 2013 Article As Two Separate Publications in 2014—Is Barred By The Single-Publication Rule.**

Plaintiff also cannot circumvent the statute of limitations by re-labeling the 2013 Top 10 list as a "Second Article" and "Third Article" published during the limitations period. The only allegedly defamatory statement is the inclusion of Plaintiff on a list of those perceived to be among the 10 most corrupt Mexicans of 2013, *which occurred in the original publication on December 16, 2013.* (¶ 1.) The title, original text, and website location of the Article were never changed thereafter. (*Compare* Am. Compl. Exs. 1-3.) The single publication rule "permits only one [defamation] cause of action to be maintained for any single publication." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004).[18]

Plaintiff's sole basis for alleging that there were a Second and Third Article is that "updates" were appended to the end of the Article on December 15, 2014 and December 22, 2014. Just the opposite, those updates explain that Plaintiff was "cleared" of "illicit enrichment." In their entirety, the updates stated:

---

[18] Virginia follows the single publication rule. *See Morrissey v. William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984) (upholding application of the rule); *Katz*, 332 F. Supp. 2d at 918 ("Virginia follows the 'single publication rule'").

>*Update Dec. 15, 2014:* On May 29 2014, Alejandra Sota, former President
>Calderon's spokesperson, was cleared by Mexico's Department of Public
>Performance of "illicit enrichment" while she was a high level official under de
>[sic] Calderón Administration. After an investigation into how she increased her
>assets while being a public servant, the now defunct agency said that her estate
>was consistent with her income.

>*Update Dec. 22, 2014:* An update made on Dec. 15, 2014 incorrectly stated that
>the agency that investigated Alejandra Sota is now defunct. The agency does exist
>though Congress approved dissolving it in 2012.

(*See* ¶ 89 & Ex. 3.)  None of the new content supports a claim for defamation.  The updates are

exculpatory as compared to posting no update at all.  Ms. Estevez' initial characterization of the

agency as "defunct," as compared to a more accurate "Congress approved dissolving it," is

immaterial.  Count II plainly seeks to hold Ms. Estevez liable for the "sting" of the original and

unaltered content of the Article.  (*See* ¶¶ 119, 181.)

The updates are nothing like a republication that could give rise to a new statute of

limitations for the original content of the Article.    As the Sixth Circuit recently explained, that

"the key factor is whether the speaker 'intended to and does reach a new [audience].'"  *Clark v.

Viacom Int'l. Inc.*, No. 14-5709, 2015 WL 4098320, at *8 (6th Cir. July 8, 2015) (quoting

Restatement (Second) of Torts § 577A, cmt. d, and citing Robert D. Sack, *Sack on Defamation:

Libel, Slander, and Related Problems* § 7:2.1 (4th ed. 2010)).  "[T]he test of whether a statement

has been republished is if the speaker has affirmatively reiterated it in an attempt to reach a new

audience that the statement's prior dissemination did not encompass."  *Id.* at *9.

The New York Court of Appeals reached a similar conclusion in *Firth v. State*, 98

N.Y.2d 365, 371 (2002), holding that republication "occurs . . . [where] the subsequent

publication is intended to and actually reaches a new audience."  Noting that "[w]eb sites are in a

constant state of change, with information posted sequentially on a frequent basis," the court

rejected the theory that "any modification to a Web site constitutes a republication of the

defamatory communication itself," cautioning that such a rule would "discourage the placement of information on the Internet or slow the exchange of such information, reducing the Internet's unique advantages." *Id.* at 371-72.

Here, the alleged updates do not reflect any effort to reach a new audience. The updates do not modify the substance of the original Article—all pre-existing content is preserved verbatim, to the point that an inconsequential error in the first update was corrected by a second update rather than by altering the substance of the first update (*see* Am. Compl. Ex. 3)—and the Complaint does not—because it cannot—allege *any* efforts to get the original content to a new audience. When the Article was first published in 2013, Plaintiff alleges extensive efforts to reach a broad audience, including allowing the Article to be listed on the front page of the Forbes.com website as one of the "Top Stories", and as one of the "Most Popular" posts, posting links to the Article on Twitter , and discussing the article on Mexican television. (¶ 158.) The Complaint does not allege any similar effort to reach a new audience in connection with the updates, even though this failure was highlighted in the prior motion to dismiss. On the contrary, the exhibits to the Complaint demonstrate that the URL of the Article remained the same throughout: http://www.forbes.com/sites/doliaestevez/2013/12/16/the-10-most-corrupt-mexicans-of-2013/  (*See* Am. Compl. Exs. 1-3.)[19]

Because the alleged updates do not add defamatory content to the original substance of the Article, and because the Complaint cannot allege any effort whatsoever to reach a new audience for the original content, Count II is barred. *See Clark*, 2015 WL 4098320, at *9.

---

[19] *Compare Firth v. State*, 306 A.D.2d 666, 667 (N.Y. App. Div. 3d Dep't 2003) ("allegations that the report was moved to a different Internet address are sufficient to state a cause of action for republication to a new audience akin to the repackaging of a book from hard cover to paperback").

## II.    THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED.

Plaintiff's claim of tortious interference should be dismissed for failure to adequately plead any of its elements, including that: (1) a business relationship or expectancy exists, with a probability of future economic benefit; (2) defendant knew of the relationship or expectancy; (3) absent intentional misconduct, it was reasonably certain the plaintiff would have continued in the relationship or realized the expectancy; and (4) plaintiff suffered damages from the interference. *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.,* 249 F.3d 204, 213 (4th Cir. 2001).

First, Plaintiff's the tortious interference claim must be dismissed because she fails to plead the predicate defamation claim for all the reasons set forth above. *See Ass'n for Supervision & Curriculum Dev., Inc. v. Int'l Council for Educ. Reform & Dev., Inc.*, No. 1:10CV74, 2011 WL 1225750, at *9 (E.D. Va. Mar. 14, 2011) (tortious interference claims dismissed because underlying claim of defamation could not be established).

Second, Plaintiff's fails to plead "*specific,* existing contract or business expectanc[ies]." with which the defendant has allegedly interfered. *Masco Contractor Servs. E., Inc. v. Beals,* 279 F. Supp. 2d 699, 709-10 (E.D. Va. 2003) (emphasis in original).  Plaintiff's general allegations of "officials," governors," and the like (¶¶ 195, 198, 240) are insufficient.

Third, and relatedly, Plaintiff fails to sufficiently allege reasonable certainty that she would receive any of the alleged prospective business. *See N.Y. Carpet World, Inc. v. Grant,* 912 F.2d 463, 1990 WL 123871, at *2 (4th Cir. 1990).  While Plaintiff places hypothetical values on two vaguely alleged projects (¶ 195), she does not allege the identity of the clients, the nature of the work, the timing, the duration, the basis for the estimates, or any other basis for asserting that it was reasonably probable. *See Cox v. MAG Mut. Ins. Co.*, No. 3:14-CV-377-JAG, 2015 WL 1640513, at *4-5 (E.D. Va. Apr. 9, 2015) ("Cox's hope that ten unnamed former or current customers would choose him cannot rise above a speculative level."); *Brainware, Inc.*

*v. Mahan,* 808 F. Supp. 2d 820, 830 (E.D. Va. 2011) (dismissing tortious interference claim

where plaintiff alleged interference with a specific customer, but failed to allege facts showing

reasonably certain opportunities with that customer).

Fourth, and crucially, Plaintiff fails to plead that Estevez had knowledge that Plaintiff

was even considering starting a business and comes nowhere near alleging knowledge of any

specific projects.  Instead, the Complaint uses the language of negligence, alleging that "Estevez

knew *or should have known*" based on unidentified reports.  (¶ 194.)  That is patently insufficient.

*See Chaves v. Johnson*, 230 Va. 112, 120-21 (1985) ("knowledge of the business relationship

and his intent to disturb it are requisite elements"); *Dunlap v. Cottman Transmission Sys., LLC*,

287 Va. 207, 218 (2014) (tortious interference is an "intentional tort").

Fifth, Plaintiff cannot recover lost profits because she lacks allegations that "afford[] a

sufficient basis for estimating" the amount being claimed.  *Muir v. Navy Fed. Credit Union*, 744

F. Supp. 2d 145, 148-49 (D.D.C. 2010) (applying Virginia law).  Here, quite the opposite, Sota

admits that she was in the "very early stages" of trying to build a new business and had "no

experience in operating a business."  (¶ 7.)  On those facts, her alleged damages are simply too

speculative as a matter of law.  *Coastland Corp. v. Third Nat'l Mortg. Co.*, 611 F.2d 969, 977

(4th Cir. 1979) (denying lost profits based on the interruption or prevention of a new business

because "estimates cannot be made with any degree of certainty for a new business, since they

are purely speculative and existing only in anticipation'") (citation omitted; collecting cases).

## CONCLUSION

For the foregoing reasons, defendant Dolia Estevez respectfully requests that the Court

dismiss the Corrected Amended Complaint in its entirety, with prejudice, pursuant to Fed. R.

Civ. P. 12(b)(6).

Respectfully submitted,

Dated:  October 13, 2015              By:   ____/s/ John A. Trocki III_____
                                           John A. Trocki III (Va. Bar No. 38656)
                                           Morrison & Foerster LLP
                                           1650 Tysons Boulevard, Suite 400
                                           McLean, VA 22102
                                           Telephone:  (703) 760-7712
                                           Facsimile:  (703) 760-7777
                                           JTrocki@mofo.com

                                           and

                                           Ronald G. White (admitted *pro hac vice*)
                                           Kayvan B. Sadeghi (admitted *pro hac vice*)
                                           MORRISON & FOERSTER LLP
                                           250 West 55th Street
                                           New York, New York 10019
                                           Telephone:  (212) 468-8000
                                           Facsimile:  (212) 468-7900
                                           RWhite@mofo.com
                                           KSadeghi@mofo.com

                                           *Attorneys for Defendant Dolia Estevez*

Of Counsel:

Charles J. Glasser, Jr.
Charles Glasser LLC
53 Valley Way
West Orange, NJ 07052
(973) 666-6270

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was delivered by electronic filing and also by email, as indicated, on this 13th of October, 2015, to:

Richard Scott Meyer, Esq.
Jonathan Sherman, Esq.
**Boies Schiller & Flexner LLP**
5301 Wisconsin Ave NW
Suite 5700
Washington, DC 20015-2015
202-274-1130
Fax: 202-237-6131
Email: rmeyer@bsfllp.com
jsherman@bsfllp.com

John F. Cove, Jr.
Beko O. Reblitz-Richardson
**Boies Schiller & Flexner LLP**
1999 Harrison Street
Suite 900
Oakland, CA 94612
jcove@bsfllp.com
brichardson@bsfllp.com

*Counsel for Plaintiff*

By:   ___/s/ John A. Trocki III_____
John A. Trocki III (Va. Bar No. 38656)
Morrison & Foerster LLP
1650 Tysons Boulevard, Suite 400
McLean, VA 22102
Telephone:  (703) 760-7712
Facsimile:  (703) 760-7777
JTrocki@mofo.com

32