IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



ALEJANDRA SOTA MIRAFUENTES,   )
                              )
            Plaintiff,        )
                              )
v.                            )   Civil Action No. 1:15-cv-610
                              )
DOLIA ESTEVEZ,                )
                              )
            Defendant.        )
                              )

## ORDER

This controversy arises out of an article entitled "The 10 Most Corrupt Mexicans Of 2013" (the "Article") written by Defendant Dolia Estevez ("Estevez") and published on Forbes.com. Based on the statements within the Article, Plaintiff Alejandra Sota Mirafuentes ("Sota") has sued Estevez claiming defamation and tortious interference with business relations. Currently pending before the Court is Estevez's Motion to Dismiss the First Amended Complaint ("FAC"). This is the second time this case has been before the Court. The Court dismissed the original Complaint, on a similar motion to dismiss, in August of 2015. For the reasons stated below, the Motion to Dismiss the FAC is GRANTED.

### I. Background

Plaintiff Alejandra Sota Mirafuentes is the former spokesperson and advisor to former Mexican President Felipe Calderón. In 2012 Sota "was named one of the 300 most influential leaders in Mexico." Dkt. 29, at ¶ 44. In December 2012, the Calderón Administration ended and Sota resumed private life. She is currently running a private business. Defendant Dolia Estevez is a part-time "Washington correspondent" for Noticias MVS, a media conglomerate in Mexico, as well as a Forbes contributor. On December 16, 2013, Ms. Estevez posted an article titled

1

"The 10 Most Corrupt Mexicans of 2013," on Forbes.com. Sota was included as the last individual on the list.

The Article made three assertions about Sota: (1) Sota was "being investigated by Mexican authorities for alleged embezzlement and trafficking of influence;" (2) Sota was "suspected of favoring friends and former classmates with government contracts during the time she served as a top government official;" and (3) Sota was "attending graduate school at Harvard's Kennedy School even though she has no college degree." Dkt 29-1. Sota admits that she was being investigated by Mexican authorities for corruption and that she attended Harvard's Kennedy School without receiving a college degree.

Estevez posted three subsequent updates below the Article regarding Sota. First, a December 23, 2013, update noted that Sota objected to being included in the list. Second, a December 15, 2014, update (the Second Article) noted that Mexico's Department of Public Performance had cleared Sota of "illicit enrichment" charges. The update described the Department of Public Performance as a "defunct agency." A third update, posted December 22, 2014, (the Third Article) acknowledged that the previous update had "incorrectly stated that the agency that investigated Alejandra Sota is now defunct." Dkt. 29-3. It went on to explain that "[t]he agency does exist though Congress approved dissolving it in 2012." *Id.*

Sota alleges that the Articles were part of a larger campaign to destroy Sota's reputation started by MVS, Estevez's employer. Sota asserts in the FAC that "MVS was engaged in a commercially-based revenge campaign against Sota based on the Calderón administration's refusal, with Sota as the spokesperson, to give MVS a low-price renewal deal for the 2.5GHz." Dkt. 29, at ¶ 128. Sota also alleges that in furtherance of this campaign, Carmen Aristegui, a reporter for MVS, "devoted much of 2013 to talking about Sota's alleged corruption on her radio show and her web-based newspaper bearing her name." *Id.* at ¶ 16. Sota alleges that Estevez,

2

who worked for MVS, had "been influenced by, and is beholden to, the interests of [Carmen] Aristegui and MVS." *Id.* ¶ 127. Accordingly, Estevez became "an active participant in these efforts to attack and discredit Sota as evidenced by her ties to MVS, [and] her harassment of Sota at Harvard." *Id.* at ¶ 129. Sota argues that Estevez included her on the list of most corrupt Mexicans of 2013, next to a "gallery of figures connected with drug trafficking, murder, kidnapping, and massive embezzlement or bribery," in order to further this revenge campaign. *Id.* at ¶ 133.

Based on the Article and its updates, Sota brings three causes of action against Estevez in the FAC: (1) defamation based on the original Article; (2) defamation based on the updates to the Article; and (3) tortious inference with business relations.[1]

## II. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d

---

[1] The parties agree that Virginia law governs these claims.

3

462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III. Analysis**

Estevez moves to dismiss all three causes of action put forth in the FAC for failure to state a claim. The Court will first address the defamation claims and then the tortious interference claim.

*A. Defamation Claims*

Estevez makes several arguments for why the defamation claims should be dismissed. However, this Court need only address one: whether the FAC sufficiently states a claim for defamation upon which relief can be granted.

Under Virginia law, the elements of a defamation claim are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (citing *Gazette, Inc. v. Harris*, 229 Va. 1 (1985)). If the plaintiff is a public official or public figure, the First Amendment requires clear and convincing evidence that the statement was made with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). The first element, whether there was a publication, is not in dispute. The second and third elements, however, are in dispute.

The second element of a defamation claim requires an "actionable statement." *Chapin*, 993 F.2d at 1092. For a statement to be actionable, it "must be both false and defamatory." *Jordan v. Kollman*, 269 Va. 569, 575 (2005). "[S]tatements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false." *Id.* at

4

576. However, there is not "a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Biospherics, Inc. v. Forbes*, 151 F.3d 180, 183 (4th Cir. 1998) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)). The Supreme Court "directs that an opinion may constitute actionable defamation, but only if the opinion can be reasonably interpreted to declare or imply untrue facts." *Id.* (citing *Milkovich*, 497 U.S. at 20). In making this determination, courts should examine "the statement's language and context." *Id.* This analysis should consider the "general tenor of the article" as well as whether the language in the article was "loose, figurative, or hyperbolic." *Id.* (quoting *Milkovich*, 497 U.S. at 20).

Estevez argues that the FAC must be dismissed because none of the complained of statements are actionable: they are either true statements of fact or Estevez's opinion. It is proper for the Court to determine whether the statements are actionable or not at the 12(b)(6) stage because "[w]hether a statement is actionable is a matter of law to be decided by the court." *Chapin*, 993 F.2d at 1092; *Hyland v. Raytheon Technical Servs. Co.*, 277 Va. 40, 47 (2009). *Arthur v. Offit*, 2010 WL 883745, at *3 (E.D. Va. Mar. 10, 2010) ("[C]ourts in Virginia and the Fourth Circuit routinely dismiss at the outset defamation claims that are based on constitutionally protected speech by media defendants.").

Sota complains of several specific false statements that she alleges were asserted in the Articles. First, Sota argues that the Articles falsely assert three things regarding corruption: (1) Sota is perceived to be corrupt; (2) Sota is in fact corrupt; (3) and Sota is in fact and is perceived to be one of the most corrupt people in Mexico.

As an initial matter, the Article does not directly state that Sota "was in fact corrupt." *Id.* Rather, the Article states that she was one of "10 Mexicans perceived to be among the most corrupt in 2013." Dkt. 29-1. Although the headline abbreviates this statement as "The 10 Most Corrupt Mexicans of 2013," the meaning of a headline is to be considered in the context of the

5

entire article. *Robins v. Nat'l Enquirer, Inc.*, 1995 WL 776708, at *3 (D.S.C. Apr. 10, 1995) ("[T]he court must review the entire article, including the headlines, the photograph with the accompanying copy beneath it, and the narrative contained in the article."); *see also*, Restatement (First) of Torts § 563 cmt. d ("In determining the meaning of a communication, words, whether written or spoken, are to be construed together with their context. Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable."); *Yeagle v. Collegiate Times*, 255 Va. 293, 297–98 (1998) (upholding dismissal of claim after "considering the phrase at issue in the context of the entire article"). When the headline is considered with the accompanying text it is clear that the Article does not assert that Sota is in fact corrupt or that she is one of the most corrupt Mexicans. Rather the Article asserts that because she is being investigated by Mexican authorities and because she is attending graduate school at Harvard, despite the fact that she has no college degree, Sota is *perceived* to be one of the most corrupt Mexicans. As the "perceived" statement is the only actual assertion the Article makes, the Court need only assess whether this statement regarding corruption is actionable.

The assertion that Sota was perceived to be among the most corrupt Mexicans in 2013 is not actionable because it is not objectively verifiable and instead amounts to a subjective assertion. In determining whether a statement could be interpreted as asserting fact, *Milkovich* and *Biospherics* focused on the "verifiability of the statement." *Biospherics*, 151 F.3d at 184. As Estevez points out, "there is no objective test to determine who is the 'most' corrupt." Dkt. 35, at 16. Rather, the assertion of who is the most corrupt or who is perceived to be the most corrupt "depend[s] largely upon the speaker's viewpoint," and is thus best categorized as opinion. *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 131–32 (2003). Estevez's inclusion of Sota on the list is undoubtedly her "personal conclusion" derived from the two

6

admittedly true factual bases disclosed in the Article. *Biospherics*, 151 F.3d at 185 (citing *Phantom Touring, Inc. v. Affiliated Publ'ns.*, 953 F.2d 724, 730–31 (1st Cir. 1992). Further, Sota herself all but admitted that the Article was an opinion piece in a post on Twitter. Dkt. 40-1 ("If Ms. Estevez cannot explain how she reached her conclusion, then probably her story is not the product of rigorous journalistic investigation but an unfounded and politically motivated opinion piece.").

Finally, when taken as a whole, the "general tenor" of this "top ten" Article signifies that it is expressing Estevez's opinion as to who the ten most corrupt Mexicans are. *See Biospherics*, 151 F.3d at 185. The Sixth Circuit recently observed that "'top ten' lists," like the Article, are "appear[ing] with growing frequency on the web." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 600 (6th Cir. 2013). These "listicles" are intended to convey ideas in an easy to digest format, and "a reasonable observer understands that placement on and ranking within the bulk of such lists constitutes opinion, not a provable fact." *Id.* (holding TripAdvisor's placement of Grand Resort on the list of "2011 Dirtiest Hotels list" to be opinion); *see also Vogel v. Felice*, 127 Cal. App.4th 1006, 26 Cal. Rptr.3d 350, 361 (2005) ("[I]t is inconceivable that placement on the 'Top Ten Dumb Asses' list [appearing on a website] could be understood to convey any imputation of provable defamatory fact."). These finite lists inherently require authors to exercise opinion and discretion as they choose and rank who or what to include. In *Milkovich*, the Supreme Court observed that "[c]ertain formats—editorials, reviews, political cartoons, letters to the editor— signal the reader to anticipate a departure from what is actually known by the author as fact." 497 U.S. at 32. The Internet listicle, whose popularity post-dated *Milkovich* by at least a decade, might be a welcome addition to this group of articles that signal opinion to readers simply by their format. For this and all the reasons articulated above, the Court finds that "no reasonable

reader" would consider Sota's inclusion in the Article as anything but the opinion of the author. *Biospherics*, 151 F.3d at 185.

Sota also cannot succeed on her argument that the Articles give rise to a defamatory inference that she is in fact corrupt. That inference is based on admittedly true statements of fact. No matter how damaging, a true statement that the plaintiff is "under investigation by state authorities" will "never provide the foundation for a defamation claim." *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990).

Sota next complains that despite her exoneration, the Second and Third Articles renewed the First Article's assertions of corruption and falsely stated that the exonerating agency was "defunct." Estevez admits that calling the investigating agency "defunct" was false. In fact, Estevez published an update in which she stated that she had "incorrectly stated that the agency that investigated Alejandra Sota is now defunct. The agency does exist though Congress approved dissolving it in 2012." Dkt 29-3. Despite the fact that this statement was false, Estevez argues that the "technical distinction between 'defunct' and approved for dissolution," is a distinction that "is not defamatory." Dkt. 35, at 15. In response, Sota asserts that Estevez's statement that she had been "exonerated by a 'defunct' agency" was defamatory because it led "the reader to believe that the exoneration was somehow corrupt or invalid." Dkt. 29, ¶ 90.

The Fourth Circuit has concluded that "[i]f the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'" *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (holding that Plaintiff cannot "combine the damaging nature of certain true statements with the falsity of other, immaterial statements in order to provide the basis for a defamation claim"). The statement at issue here is merely a minor inaccuracy. The "gist," or substance, of the

statement is accurate and the small inaccuracy was easily corrected in the subsequent update. Accordingly, the Court declines to find this statement is actionable.

Sota finally asserts, in a footnote, that the Articles are actionable because they imply false undisclosed facts that support Sota's inclusion on the list. The Fourth Circuit has held that "[a] libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993). The Fourth Circuit has further explained that "when the bases for the . . . conclusion are *fully* disclosed, no reasonable reader would consider the [conclusion] anything but the opinion of the author drawn from the circumstances related." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) (emphasis added) (internal quotation marks omitted).

Estevez fully disclosed the basis for her conclusion that Sota was one of the "10 Mexicans perceived to be among the most corrupt in 2013": (1) Sota's investigation by Mexican authorities for alleged embezzlement and trafficking of influence; and (2) her admission to Harvard's Kennedy School despite her lack of a bachelor's degree. Sota does not dispute the truth of those statements. None of the statements the Articles made about Sota imply that there are further facts that justify Sota's inclusion on the list that were not disclosed. Restatement (Second) of Torts § 566 cmt. c (1977) (concluding that statement is not actionable because "[t]he statement indicates the facts on which the expression of opinion was based and does not imply others"). Estevez's acknowledgment that she accepted "input" from "colleagues and academics" when crafting the list also does not imply that the list is based on unidentified false facts. Rather this statement merely acknowledges that Estevez considered the opinions of others when drafting

the list. Accordingly, the Court declines to find the Articles actionable on the grounds that they imply false facts.

The statements Sota complains of are, for the most part, Estevez's opinion and cannot reasonably be interpreted to declare or imply untrue facts. There is no objective way to prove whether Sota is in fact perceived to be one of the top ten most corrupt people in Mexico. Estevez stated her opinion on the subject and provided a factual basis for this opinion. Sota admits that the factual basis for Estevez's opinion is true. For all of these reasons, the statements about Sota being perceived as corrupt are not actionable. The only false fact contained in the Articles was the statement that the agency that exonerated Sota was "defunct." Because this was a minor inaccuracy it is also not actionable. Because Sota has not identified an actionable statement, she has not satisfied the second element of her defamation claims. Accordingly, the Court must dismiss the defamation claims because Sota has failed to state claims for defamation upon which relief can be granted.

*B. Tortious Interference Claim*

Estevez has next moved to dismiss Count III because Sota has failed to plausibly allege a claim of tortious interference with business relations. Specifically, she claims that Sota has failed to allege that Estevez had knowledge that Sota was even in business or that Estevez had knowledge of Sota's particular business expectancies.

Under Virginia law, to state a claim for tortious interference with business expectancy a plaintiff must: "(1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference." Comm*erce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249

F.3d 204, 213 (4th Cir.2001). Under Virginia law, a plaintiff's failure to allege a "*specific, existing* contract or business expectancy" with which the defendant has allegedly interfered is "fatal to the claim." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709–10 (E.D. Va. 2003). Further, a plaintiff's mere "'belief and hope that a business relationship will continue is inadequate to sustain the cause of action.'" *Southprint, Inc. v. H3, Inc.*, 208 F. App'x 249, 253 (4th Cir. 2006) (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301 (1997)). Rather, a valid business expectancy requires "expectancy by and between two parties at least, based upon something that is a concrete move in that direction." *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (internal quotations omitted).

Sota has not done enough to survive the Motion to Dismiss because she failed to adequately allege that Estevez had knowledge of Sota's specific business expectancies. Sota has generally alleged that Estevez knew she was starting a business or that she should have known this fact based on news reports and Estevez's own reporting on Sota during the five months preceding the publication of the Article. However, Estevez's alleged knowledge of Sota's business does not equate to Estevez having knowledge of specific, existing contracts held by Sota.

Sota has identified specific contracts she had that were hurt when the Article was published. For example the FAC alleges that, "Sota was in negotiations with certain government officials, who planned to hire her. Those engagements were valued in total between approximately $875,000 to $1.7 million U.S. dollars." Dkt. 29, at ¶ 195. In addition, the FAC alleges Sota's business partner in a U.S-based consulting partnership backed out. *Id.* The FAC further asserts that "[a] major client and referral source stopped hiring Sota for specific projects." *Id.* While these allegations are specific, they do not actually state by name the individuals or businesses with which Sota had business relationships. Most importantly,

11

however, the FAC does not allege that Estevez knew of any of Sota's business relationships with any of these unnamed individuals. Without this allegation, the Amended Complaint falls short of the Rule 8 pleading standard. Accordingly, the Court must dismiss Count III because Sota has failed to allege facts sufficient to support her claim of tortious interference with business relations.

### III. Conclusion

For the foregoing reasons, the Court ORDERS that the Motion to Dismiss is GRANTED and the First Amended Complaint is DISMISSED WITH PREJUDICE.

/s/
Liam O'Grady
United States District Judge

November 30 2015
Alexandria, VA